UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, ) ) ) Plaintiff, ) vs. ) MARTIN SCOTT HALL, ) ICOE, LLC, ) ) Defendants. ) | NO. 1:07-cv-00992-LJM-TAB |

## ORDER ON DEFENDANT SCOTT HALL'S MOTION TO DISMISS AND, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT

Pending before the Court is defendants', Scott Hall ("Hall") and ICOE, LLC ("ICOE") (collectively, "Defendants"),[1] Motion to Dismiss and, Alternatively, Motion for Summary Judgment ("Motion for Summary Judgment")[2] (Dkt. No. 179). Defendants seek summary judgment on plaintiff's, PNC Bank, National Association ("Plaintiff"), conversion claim and dependant liability under the Indiana Crime Victim's Relief Act. Dkt. No. 179; *see also* Dkt. No. 58 ("Amended Complaint"). The Court has considered the parties' submissions, and for the following reasons, Defendants' Motion for Summary Judgment (Dkt. No. 179) is **GRANTED in part** and **DENIED in part**.

---

[1] The original defendants in this action were Hall; ICOE, Ltd; ICOE, LLC; and Thermo Credit, LLC. Dkt. No. 58. ICOE, Ltd. and Thermo Credit, LLC have been dismissed from this action on jurisdictional grounds. *See* Dkt. Nos. 156, 157. Only Hall and ICOE, LLC remain as defendants.

[2] Given the nature of Hall's arguments and his inclusion of affidavits, the Court construes his motion as a Motion for Summary Judgment and addresses it accordingly. *See* Fed. R. Civ. P. 12(d) ("If . . . matters outside the pleadings are presented . . . the motion must be treated as one for summary judgment[.]" Plaintiff appears to have already concluded as much. *See* Dkt. Nos. 183–84.

## I. BACKGROUND

This case is one of a number of related cases[3] arising from the collapse of OCMC, Inc. ("OCMC"), a Carmel, Indiana based telecommunications company. To fund its daily operations, OCMC borrowed money from Plaintiff under a number of loan agreements ("Loan Agreements"), which gave Plaintiff a priority security interest in OCMC's accounts receivable. Dkt. No. 184-1. Plaintiff perfected its security interest in OCMC's receivables by filing financing statements with the Indiana Secretary of State. Dkt. No. 184-3 at 44–50.

In October 2005, four of OCMC's officers—Joseph Pence ("Pence"), Brad Benge ("Benge"), Ann Bernard ("Bernard"), and Lester Li ("Li") (collectively, the "Officers")—were required to make additional capital contributions to OCMC totaling approximately $240,000. Dkt. No. 184-4 at 2. The Officers formed a corporation, BT&M, to make the capital contribution. *Id.* at 3. Li made his own capital contribution through BT&M, totaling $40,000. *Id.* Pence, Benge, and Bernard borrowed the rest of the funds from Hall, a former OCMC employee and principal of Navicomm, Inc. ("Navicomm"), one of OCMC's customers. *Id.* at 3–4; *see also generally* Dkt. No. 184-5. There was no written documentation of the loan from Hall to Pence, Benge, and Bernard ("Hall Loan"). Dkt. No. 184-4 at 5. Neither Plaintiff nor OCMC's Board of Directors were informed of the Hall Loan. Dkt. No. 184-6 at 4. The parties dispute whether the Hall Loan was repaid.

Soon after the Hall Loan, OCMC approached Hall looking to transfer some of OCMC's misdialed traffic[4] to one of Hall's companies. Dkt. No. 184-8 at 14. Hall contends

---

[3] *See also PNC Bank, Nat'l Assoc. v. OCMC, Inc.*, No. 06-CV-755 (S.D. Ind. filed May 11, 2006); *Meridian Financial Advisors, Ltd v. Pence*, No. 06-CV-995 (S.D. Ind. filed July 31, 2007); *PNC Bank, Nat'l Assoc. v. Pence*, No. 08-CV-502 (S.D. Ind. filed Apr. 18, 2008).

[4] Colloquially known as "Fat Finger" traffic, misdialed traffic involved collecting fees when a caller dialed a number such as 1-800-CALL-ATP instead of 1-800-CALL-ATT. Dkt. No. 184-8 at 14. Instead of going to the intended party, these calls would be routed through OCMC. *Id.*

that these accounts, the "Fat Finger Receivables," were about to be lost by OCMC if the company could not find a buyer because OCMC could not pay the agents' commissions. *Id.* at 16. Hall engaged Thermo Credit, Inc. ("Thermo Credit") to factor the Fat Finger Receivables. *Id.* Before agreeing to the factoring transaction, Thermo Credit came to OCMC's Carmel office to perform due diligence, including an evaluation of the Fat Finger Receivables' historical performance. *Id.* at 17–18. Hall depended on Thermo Credit for due diligence and did not conduct any independent investigation regarding the Fat Finger Receivables. *Id.* at 18. Hall paid Thermo Credit the fees for factoring the Fat Finger Receivables with a Navicomm check. Dkt. No. 184-9 at 8.

In October 2005, a quad-party agreement was executed transferring the Fat Finger Receivables to ICOE (the "Fat Finger Receivables transfer"). *Id.* at 9–10. As part of the agreement, OCMC transferred the Fat Finger Receivables, as well as the billings on those accounts for August, September, and October 2005. *Id.* at 11. ICOE agreed to remit fees to OCMC for continuing to process the traffic. Dkt. No. 184-8 at 14. OCMC's clearinghouse for the traffic was directed to remit whatever it received on the Fat Finger Receivables to Thermo Credit. Dkt. No. 184-9 at 10. Plaintiff was not informed of the Fat Finger Receivables transfer. Dkt. Nos. 184-6 at 5, 184-9 at 14, 184-10 at 6.

ICOE was a limited liability company organized under Nevada law. Dkt. No. 184-8 at 9. Hall was the sole owner and employee of ICOE, which he ran from his home in Texas. Dkt. No. 184-9 at 3. Prior to the Fat Finger Receivables transfer, ICOE had no business. Dkt. No. 184-9 at 15. Because both Navicomm and ICOE were controlled by Hall and did business with OCMC, there appears to be some confusion by OCMC accounting personnel, as well as Thermo Credit, as to which company was involved in the

Fat Finger Receivables transfer, although the parties now agree that ICOE, not Navicomm, was involved. ICOE is now defunct. *Id.* at 2.

On July 31, 2007, Plaintiff filed suit in this Court, alleging conversion of the Fat Finger Receivables by Defendants. *See generally* Amended Complaint. Plaintiff asserts that the Fat Finger Receivables transfer was executed in violation of its priority security interest in the Fat Finger Receivables. *Id.* ¶¶ 21–30. Plaintiff contends that OCMC transferred the Fat Finger Receivables to ICOE in exchange for the Hall Loan. Dkt. No. 183 at 1–2. In addition to the conversion claim, Plaintiff seeks treble damages under the Indiana Crime Victim's Relief Act, as well as a declaratory judgment establishing Plaintiff's priority interest in the Fat Finger Receivables. Amended Complaint ¶¶ 49–52, 59–64.

The Court adds below additional facts as needed.

## II. STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence.  *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted

5

to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III.  DISCUSSION

### A.  FAILURE TO COMPLY WITH LOCAL RULE 56.1

At the outset, the Court notes Plaintiff's argument that Defendants' Motion for Summary Judgment fails to comply with Local Rule 56.1. *See* Dkt. No. 183 at 3. In their supporting brief, Defendants did not present a list of material facts not in dispute. *See* Dkt. No. 179. Local Rules require that briefs accompanying motions for summary judgment include "a section . . . containing the facts potentially determinative of the motion as to which the moving party contends there is no genuine issue." S.D. Ind. L.R. 56.1. Failure to comply with this requirement may lead to the court deeming admitted the opposing party's statements of fact. *Little v. Cox's Supermarkets*, 71 F.3d 637, 640 (7th Cir. 1995).

However, the purpose of Local Rule 56.1 is "to let the court and the opposing party know what legal and factual issues are on the table." *Harmon v. OKI Sys.*, 115 F.3d 477, 481 (7th Cir. 1997). A court may excuse noncompliance in the interest of justice. S.D. Ind. L.R. 56.1(i). Defendants are *pro se* in this matter, and *pro se* submissions are to be construed liberally. *See Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006). The Court concludes that Defendants' Motion for Summary Judgment adequately apprises Plaintiff and the Court of the issues on the table. Therefore, the Court proceeds to address those issues.

## B. PIERCING THE CORPORATE VEIL

When a person and an organization are alleged to be, in effect, the same, a court must determine whether the individual should be held liable for the organization's activities by piercing the corporate veil. *See Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994). To determine whether the corporate veil should be pierced, a court must look to the law of the state of the company's organization. *See RSR Corp. v. Avanti Devel. Inc*, No. IP 95-1359, 2000 WL 1448705, *12 n.10 (S.D. Ind. Mar. 31, 2000) (McKinney, J.) (piercing the corporate veil "presumptively governed by the law of the state of incorporation"). In this case, all parties agree that the law of Nevada, the state of ICOE's incorporation, presumptively controls the piercing the corporate veil analysis.

### 1. NOTICE

First, Hall argues that Plaintiff's Amended Complaint does not provide sufficient notice of Plaintiff's intent to use piercing the corporate veil as a means to hold him individually liable. Dkt. No. 179 at 2–3 (citing Fed. R. Civ. P. 8(a)). Claims arising from piercing the corporate veil are subject to the notice pleading standards of Federal Rule of Civil Procedure 8(a). *Fifty-Six Hope Rd. Music, Ltd. v. Mayah Collections, Inc.*, No. 05-CV-1059, 2006 WL 1687451, *2 (D. Nev. June 16, 2006). A complaint seeking to impose individual liability through piercing the corporate veil without specifically alleging the elements of the alter ego doctrine is not required to be dismissed for lack of notice. *Id.* However, the *Fifty-Six Hope Road* court concluded that pleadings alleging that an individual defendant "is doing business as . . . and is an officer, director, shareholder, employee, distributor, agent and servant" of a particular corporation were insufficient to provide notice

7

of plaintiff's intent to rely on a piercing the corporate veil theory. *Id.* In this case, the Amended Complaint alleges no connection between Hall and ICOE other than referring to them as "Hall and/or ICOE" throughout the pleading. In other words, Plaintiff does not plead any facts suggesting a connection between Hall and ICOE. *See id.* The Court therefore concludes that Plaintiff's pleadings do not provide adequate notice to Hall of Plaintiff's intent to rely on a theory of piercing the corporate veil.[5] *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (U.S. 2009).

To correct the notice problem, Plaintiff requests that the Court amend the pleadings to conform to the evidence under Federal Rule of Civil Procedure 15(b)(2).[6] Dkt. No. 183 at 14 n.7. Federal Rule of Civil Procedure 15 ("Rule 15") requires a court to "freely give" parties leave to amend pleadings prior to trial "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may refuse to give leave to amend based upon undue delay, bad faith, dilatory motive, prejudice, or futility. *Winters v. Fru-Con Inc.*, 498 F.3d 734, 740 (7th Cir. 2007). On a motion for summary judgment, other courts have concluded that pleadings may be amended to conform to the evidence when the issues raised are tried by implied consent. *See, e.g.*, *Loftus v. Romsa Const., Inc.*, 913 P.2d 856, 862 (Wyo. 1996); *Cnty. of Rutherford ex rel. Hedrick v. Whitener*, 394 S.E.2d 263, 265 (N.C. Ct. App. 1990). The Court agrees that amendment is appropriate here. In this case, there is no

---

[5] The Court notes that, despite Hall's implied argument to the contrary, failure to plead facts for piercing the corporate veil does not preclude Plaintiff from bringing claims against him based on his personal conduct. *See DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc.*, 384 F.3d 338, 346 (7th Cir. 2004) (allowing corporate officer to be held individually liable for a tort when he "personally participates" in it).

[6] Plaintiff requests amendment under Federal Rule of Civil Procedure 15(b)(2), which applies to amendments during and after trial. Because no trial has occurred in this action, the Court construes Plaintiff's request for amendment under Rule 15(a)(2), which applies to amendments before trial.

question that Hall has knowledge of Plaintiff's intent to pierce the corporate veil and hold him personally liable for ICOE's actions. *See generally* Dkt. No. 179. Indeed, Hall spends much of his Motion for Summary Judgment discussing why Plaintiff has not proven that piercing the corporate veil is appropriate. *Id.* at 3–9. Plaintiff does not seek to add a new cause of action. *See Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (describing piercing the corporate veil as "a means of imposing liability on an underlying cause of action" rather than an independent cause of action). Additionally, there is no evidence that Plaintiff seeks amendment to delay the case further, Plaintiff has approached discovery as though Hall and ICOE as one and the same. The Court concludes that, in this case, justice requires amendment of the pleadings to conform with the evidence.

### 2. PIERCING ICOE'S CORPORATE VEIL

Hall contends that Plaintiff has not presented enough facts suggesting that Hall is the alter ego of ICOE such that he may be held personally liable for any of ICOE's alleged misdeeds. Dkt. No. 179 at 1. Looking to Nevada law, "although corporations are generally to be treated as separate legal entities, the equitable remedy of piercing the corporate veil may be available . . . in circumstances where it appears that the corporation is acting as the alter ego of a controlling individual." *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 845 (Nev. 2000). The alter ego test is a fact-sensitive inquiry that depends on the circumstances of each case. *Id.* Whether the alter ego test is met must be determined by the court as a matter of law. NEV. REV. STAT. § 78.747(3) (2010). An officer acts as the alter ego of a corporation when "(1) [t]he corporation is influenced and governed by the . . . officer; (2) [t]here is such unity of interest and ownership that the corporation and the

9

. . . officer are inseparable from each other; and (3) [a]dherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice." NEV. REV. STAT. § 78.747(2) (2010). In evaluating all of these issues, "the corporate cloak is not lightly thrown aside." *Baer v. Amos J. Walker, Inc.*, 452 P.2d 916, 916 (Nev. 1969).

Hall concedes that the first element of the alter ego analysis, influence and governance of the corporation by the officer, is present. Dkt. No. 188 at 1. However, the parties contest whether unity of interest and ownership is present. Factors that may indicate unity of interest and ownership include commingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities. *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 887 (Nev. 1987). "[M]erely influencing and governing a corporation does not necessarily demonstrate the unity of interest and ownership resulting in the requisite inseparability of a corporation and shareholder." *Wyatt v. Bowers*, 747 P.2d 881, 883 (Nev. 1987).

Plaintiff points to numerous pieces of evidence that it asserts establish the required unity. Hall was the sole owner and employee of ICOE, which he ran out of his home in Texas. Dkt. No. 184-21 at 2; Dkt. No. 184-9 at 3. Prior to acquiring the Fat Finger Receivables from OCMC, ICOE had no assets "by design." Dkt. No. 184-9 at 3. Hall admitted that he would pay his ICOE salary from one of his various companies "depending on where the cash was." Dkt. No. 184-5 at 6. Lastly, when discussing the relationship between Navicomm and ICOE, Hall said that "all the companies rolled to me anyway." *Id.* at 5. Hall counters with a number of indications that ICOE is an independent entity. He asserts that ICOE maintained a bank account, paid into the Nevada unemployment and workers' compensation funds, and paid federal income taxes. Dkt. No. 179 at 5. ICOE

also acquired necessary Federal Communications Commission ("FCC") licenses in its own name. Dkt. No. 184-9 at 3. Viewing the evidence in the light most favorable to the nonmoving party, Plaintiff has shown that ICOE was undercapitalized and that Hall did not takes steps to treat ICOE separately from his other entities, as evidenced by extensive commingling of funds between ICOE and Navicomm. However, the Court concludes that, although Plaintiff has shown that Navicomm and ICOE were effectively one entity, Plaintiff has not designated any evidence suggesting a unity of interest and ownership between ICOE and Hall, or, in other words, evidence indicating that ICOE is Hall's alter ego. Therefore, the Court declines to pierce the corporate veil is inappropriate in this case.[7] Hall may be held liable only for injuries caused by him individually, not for injuries caused by ICOE.

## C.  PLAINTIFF'S CAUSES OF ACTION

### 1.  CONVERSION

Plaintiff alleges that Defendants converted the Fat Finger Receivables and their proceeds. Amended Complaint ¶¶ 33–39. The elements necessary to establish a civil cause of action for conversion are similar to those in the criminal conversion statute and, like all civil claims, must be proven by a preponderance of the evidence. *McKeighen v. Daviess Cnty. Fair Bd.*, 918 N.E.2d 717, 723 (Ind. Ct. App. 2009). To prove conversion, a plaintiff must demonstrate that the defendant "exert[ed] unauthorized control over property of another[.]" IND. CODE § 35-43-4-3 (2010). Unlike with criminal conversion, mens

---

[7] Because Plaintiff has failed to meet its burden on the unity of interest and ownership prong of the alter ego test, the Court declines to address the manifest injustice prong.

rea is not an element of tortious conversion. *Nat'l Assoc. of Sys. Adm'rs, Inc. v. Avionics Solutions, Inc.*, No. 06-CV-159, 2008 WL 140773, *14 (S.D. Ind. Jan. 20, 2008) (Barker, J.).

First, the Court must address how failure to pierce the corporate veil effects Plaintiff's claim of conversion against Hall. A corporate officer is not liable for conversion committed by the corporation merely by virtue of holding an office. *See, e.g.*, *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986) (applying general tort principles of liability of corporate officers to conversion claim). However, officers may be held liable for conversion to the extent their actions result in a conversion by the corporation, even if they receive no personal benefit. *See, e.g.*, *Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 479 (5th Cir. 2002) (following the general principle that corporate officers are liable for torts they commit individually). There is no evidence that Hall exerted control over the Fat Finger Receivables outside of his capacity as an agent of ICOE. However, rather than being a passive officer with no connection to the transfer, the evidence shows Hall to have been personally involved in negotiating the Fat Finger Receivables transfer to ICOE. *See generally* Dkt. No. 184-8. Accordingly, Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Hall's activities in connection with the Fat Finger Receivables transfer subject him to liability for conversion, notwithstanding the corporate veil.

Defendants do not dispute that rights in the Fat Finger Receivables and their proceeds are property and were transferred to ICOE. ICOE therefore exerted control over property, the Fat Finger Receivables. *See* IND. CODE § 35-43-4-1(a) (including "to secure, transfer, or extend a right to property" as part of the definition of exerting control). In

addition, Plaintiff has brought forth evidence suggesting that the transfer of the Fat Finger Receivables was not authorized by Plaintiff. *See* Dkt. Nos. 184-6 at 5, 184-9 at 14, 184-10 at 6 (deposition testimony of Benge, Hall, and Pence, stating that they did not inform Plaintiff of the Fat Finger Receivables transfer). The Court concludes a genuine issue of material fact exists both as to whether Defendants exerted control over the Fat Finger Receivables and whether the transfer in question was unauthorized. Defendants' argument that they cannot be held liable for conversion because they lacked the requisite mental state—*see* Dkt. No. 179 at 9–10—misses the mark, as mens rea is not a required element of tortious conversion. *See Nat'l Assoc. of Sys. Adm'rs*, 2008 WL 140773, *14. The Court, therefore, concludes that Defendants are not entitled to summary judgment on the conversion claim.

### 2. INDIANA CRIME VICTIM'S RELIEF ACT

Plaintiff also seeks treble damages under the Indiana Crime Victim's Relief Act ("ICVRA"). Amended Complaint ¶¶ 49–52. Plaintiff alleges three predicate violations making application of ICVRA appropriate—conversion, deception and theft. *Id.* ¶ 51. ICVRA provides relief to persons who suffer a pecuniary loss based on violation of the provisions of Indiana Code Section 35-43. IND. CODE § 34-24-3-1 (2010). *See also* IND. CODE §§ 35-43-4-3 (conversion), -5-3 (deception), -4-2 (theft). A criminal conviction for the underlying misconduct is not necessary to maintain an action for associated ICVRA civil penalties. *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 851 (S.D. Ind. 2005) (Tinder, J.). An ICVRA plaintiff must prove violation of relevant criminal prohibitions by a preponderance of the evidence. *Id.* As discussed above, there are

genuine issues of material fact as to two elements of conversion—exerting control over the Fat Finger Receivables and whether the transfer was authorized. However, ICVRA liability requires proof of every element of the criminal prohibition. *White v. Ind. Realty Assoc. II*, 555 N.E.2d 454, 456 (Ind. 1990). Criminal conversion requires that the defendant "knowingly or intentionally exert[] unauthorized control" over another's property. IND. CODE § 35-43-4-3 (2010). In short, while mens rea need not be proven for Plaintiff to establish tortious conversion, mens rea must be proven for Plaintiff to prevail on its ICVRA claim. "Knowingly or intentionally" requires at a minimum that the plaintiff prove that the defendant "is aware of a high probability" that he is engaging in the prohibited conduct. IND. CODE § 35-41-2-2 (2010).

Defendants contend that they were unaware of Plaintiff's interest in the Fat Finger Receivables and, therefore, did not possess the requisite knowledge for conversion. Dkt. No. 188 at 6–8. Plaintiff, in contrast, asserts that Hall knew about OCMC's loan relationship with Plaintiff, and properly conducted due diligence would have revealed Plaintiff's security interest in the Fat Finger Receivables. Dkt. No. 183 at 20–21. Plaintiff's evidence indicates that Hall was aware that Plaintiff loaned funds to OCMC, although there is no evidence that Hall knew the terms of the Loan Agreements, including the fact that the loans were secured through OCMC's accounts receivable. Dkt. No. 184-4 at 4–5. In addition, Plaintiff brings forth evidence that a search for possible registered security interests would be part of standard due diligence, but no such search was performed by Defendants or their representatives. Dkt. No. 184-9 at 14; *see also generally* Dkt. Nos. 184-14, 184-15, 184-16 (explanations of the due diligence undertaken by Thermo Credit). Plaintiff also has designated evidence of its security filing with the Indiana Secretary of

State. Dkt. No. 184-3 at 44–50. However, while this evidence might establish that Defendants should have been aware of Plaintiff's interest in the Fat Finger Receivables, "should have known" is a lower culpable mental state than the statute requires. *See* IND. CODE § 35-41-2-2 (2010) (requiring that a defendant "*is aware* of a high probability" that he is engaging in prohibited conduct). Plaintiff's evidence does not create a genuine issue of material fact as to whether Defendants were in fact aware that there was a claim over the Fat Finger Receivables. Because Plaintiff has not created a genuine issue of material fact as to the mens rea requirement of criminal conversion, and all the elements of criminal conversion must be present for ICVRA liability, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's conversion-based ICVRA claim.

Plaintiff asserts that deception and theft also are proper avenues in this case to hold Defendants liable under ICVRA. Amended Complaint ¶ 51. As to deception, Plaintiff points to Indiana Code Sections 35-43-5-3(a)(6) and 35-43-5-3(a)(9). *Id.* Under these sections, a defendant commits deception if he "with intent to defraud, misrepresents the identity of the person or another person or quality of property," IND. CODE § 35-43-5-3(a)(6) (2010), or "disseminates to the public an advertisement that the person knows is false, misleading, or deceptive, with intent to promote the purchase or sale of property[.]" IND. CODE § 35-43-5-3(a)(9) (2010). Plaintiff makes no effort, either in the initial pleadings or in responding to the Motion for Summary Judgment, to demonstrate that either of these provisions applies to the case at hand. Therefore, the Court **DISMISSES** Plaintiff's deception-based ICVRA claim.

To establish theft, a plaintiff must prove that the defendant "knowingly or intentionally exert[ed] unauthorized control over the property of another person, with intent to deprive

15

the other person of any part of its value or use[.]" IND. CODE § 35-43-4-2(a) (2010). Plaintiff encounters the same problems with the mens rea requirement for theft as it did with conversion, and the Court sees no reason why failure to prove the conversion mens rea should not carry over to theft. Therefore, the Court must conclude that Plaintiff has failed to create a genuine issue of material fact as to any of its stated bases for ICVRA liability—conversion, deception, or theft. Defendants, therefore, are entitled to summary judgment on Plaintiff's ICVRA claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants', Scott Hall and ICOE, LLC, Motion for Summary Judgment (Dkt. No. 179) is **GRANTED in part** and **DENIED in part**. The Court declines to pierce the corporate veil and hold Hall personally liable for ICOE's conduct. Plaintiff's, PNC Bank, National Association, deception-based Indiana Crime Victim's Relief Act claim is **DISMISSED**. Summary Judgment is **GRANTED** in Defendants' favor as to Plaintiff's other claims under the Indiana Crime Victim's Relief Act. Summary Judgment is **DENIED** as to Plaintiff's conversion claim.

IT IS SO ORDERED this 7th day of October 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

Ryan M. Bednarczuk
TAFT STETTINIUS & HOLLISTER LLP
bednarczuk@taftlaw.com

Gerald E. Burns
BUCHANAN INGERSOLL & ROONEY P.C.
gerald.burns@bipc.com

James Braden Chapman II
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
jchapman@beneschlaw.com

Catherine E. Howard
TAFT STETTINIUS & HOLLISTER LLP
howard@taftlaw.com

William L. O'Connor
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
woconnor@beneschlaw.com

Cynthia Reese
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
creese@beneschlaw.com

William H. Schorling
BUCHANAN INGERSOLL & ROONEY PC
william.schorling@bipc.com

Thomas R. Schuck
TAFT STETTINIUS & HOLLISTER
schuck@taftlaw.com

Samantha L. Southall
BUCHANAN INGERSOLL & ROONEY PC
samantha.southall@bipc.com

MARTIN SCOTT HALL
308 Blue Quail Court
Bedford, TX 76021